**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITE HERE HEALTH,** *et al.*,<br><br>                 **Plaintiff,**<br><br>     v.<br><br>**THE PITTSBURGH ATHLETIC ASSOCIATION,**<br><br>                 **Defendant.** | **Case No. 12 C 6015**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Unite Here Health (hereinafter the "Fund") brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, seeking to recover unpaid plan contributions from Defendant Pittsburgh Athletic Association ("PAA"). The Fund has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 28). For reasons stated herein, the Motion is granted.

**I.   BACKGROUND**

The Fund is an ERISA "welfare plan" and an "employee benefit trust fund" under the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). The Fund is administered from its central offices in Aurora, Illinois.

PAA is a Pennsylvania nonprofit association and is an "employer" as the term is defined in ERISA. On November 1, 2008, PAA entered into a Collective Bargaining Agreement (the "CBA") with

the Pennsylvania Joint Board of Unite Here, Local 57, under which PAA agreed to pay contributions to the Fund at the following fixed monthly rates:

For employees hired before October 23, 2003:

  Effective November 1, 2008  $601.21/mo
  Effective March 1, 2009   $663.97/mo
  Effective March 1, 2010   $770.20/mo

For employees hired after October 23, 2003:

  Effective November 1, 2008  $440.20/mo
  Effective March 1, 2009   $485.88/mo
  Effective March 1, 2010   $563.62/mo

Through the CBA, PAA further agreed to be bound by the Agreement and Declaration of Trust of the Fund (the "Trust Agreement") and to "abide and be bound by all procedures established and actions taken" by the Trustees of the Fund ("Trustees") pursuant to the Trust Agreement. (Pl.'s' 56.1 Stmt. of Facts ("Pl.'s' Stmt.") ¶ 6, ECF No. 29). Any inconsistencies between the CBA and the Trust Agreement were to be resolved in favor of the Trust Agreement. (*Id.*).

Section 6.08 of the Trust Agreement confers upon the Trustees broad discretionary authority to interpret the terms of the Trust Agreement. Specifically, the Trustees were granted:

> full and exclusive jurisdiction and discretionary authority to decide all questions or controversies of whatever character arising in any manner between any parties or persons in connection with the Welfare Fund or the interpretation thereof, including the construction of the language of this Trust Agreement, the benefit programs,

> the rules and regulations adopted by the Trustees, and any writing, decision, benefit eligibility determination, instrument, or accounts in connection with same and with the operation of the Welfare Fund or otherwise. All decisions, determinations, and any construction of the Trust Agreement adopted by the Trustees in good faith shall be binding upon all persons dealing with the Welfare Fund. . . .

(*Id.* ¶ 7).

In addition, the Trustees were permitted to audit PAA's payroll books and collect interest and late fees on any delinquent contribution payments. (*Id.*).

On February 28, 2011, the CBA expired and was not renewed. Section 9.04 of the Trust Agreement mandates certain continuing obligations to the Fund upon the expiration of the CBA. That section states in relevant part that:

> [t]he Employer's obligation to make timely contributions to the Welfare Fund under its collective bargaining agreement or participation agreement and in accordance with the Minimum Standards shall continue after expiration of the collective bargaining agreement or participation agreement and during periods when a new or renewal collective bargaining agreement or participation agreement is being negotiated. The obligation to contribute includes the obligation to pay the contribution rate established by the Trustees during the post-expiration period. This obligation shall continue until the earliest of the following events: (a) impasse followed by a strike (unless the Employer and the Union agree in a writing acceptable to the Trustees that contributions will be made during and after the strike); (b) the Employer has submitted to the Welfare Fund a written notice of

> termination which states the legal basis for the termination and which has been approved by the Fund Executives in accordance with the Welfare Fund's rules and procedures for termination; or (c) the end of the 12 month period following the expiration of the collective bargaining agreement or participation agreement. The Employer's continuing obligation to make contributions after expiration of the collective bargaining agreement or participation agreement, as described above, is enforceable by the Trustees in accordance with Sections 9.06, 9.07, and 17.03 of this Trust Agreement.

(*Id.*).

On March 1, 2011, the Fund increased its monthly contribution rates to $774.45 for employees hired prior to October 23, 2003, and to $566.73 for employees hired after October 23, 2003. Between March and November 2011, PAA continued to pay contributions at the new rates set by the Trustees. From December 2011 to February 2012, however, PAA did not make any contributions to the Fund.

Pursuant to its audit powers under the Trust Agreement, the Fund conducted two contribution compliance reviews of PAA's records – the first, for work performed between January 2009 and December 2010 (the "2010 Audit"), and the second, for work performed between January 2011 and February 2012 (the "2012 Audit"). According to the Fund, the 2010 Audit showed that PAA owed $33,389.35 in overdue contributions, $1,973.37 in accrued interest, $6,677.87 in liquidated damages, and audit costs in the amount of $9,705.15. The 2012 Audit revealed further overdue contributions in the amount of $66,468.05, $2,943.57 in accrued interest, $13,293.61 in

liquidated damages, and audit costs in the amount of $7,387.99. On July 31, 2012, Matthew Walker ("Walker"), the Fund's Administrator, commenced this action on behalf of the Fund, seeking a judgment against PAA for these outstanding amounts.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Wilson v. Cook County,* 742 F.3d 775, 779 (7th Cir. 2014).

## III. ANALYSIS

Under ERISA, any employer that is obligated to make contributions to a multi-employer plan pursuant to the terms of a collective bargaining agreement must "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA permits the recovery of any unpaid contributions, interest, liquidated damages, reasonable

attorney's fees and costs, and other legal or equitable relief deemed appropriate by the Court. 29 U.S.C. § 1132(g)(2).

The Fund's audit records indicate that PAA owes a total of $141,838.96 in overdue contributions, accrued interest, liquidated damages, and audit costs. The Fund also seeks to recover the attorneys' fees and costs that it incurred through efforts it has made to collect the unpaid amounts from PAA.

PAA takes the position that it owes no outstanding contributions to the Fund. Specifically, it asserts that it was not required to make any payments after the expiration of the CBA because the parties did not negotiate a new or renewal CBA. PAA further argues that the affidavits and audit reports upon which the Fund relies are inadmissible and cannot support entry of summary judgment in favor of the Fund. Finally, PAA contends that, even if the Fund's evidence were sufficient, there are genuinely disputed factual issues concerning the total contributions PAA made to the Fund. The Court considers each of these arguments in turn.

**A. PAA's Disputed Interpretation of the Trust Agreement**

PAA first argues that it had no obligation to make payments to the Fund after the CBA expired because Section 9.04 of the Trust Agreement only required continued contributions for the period of time during which a new or renewal CBA was being negotiated. (Def.'s Mem. in Opp. to Summ. J. ("Def.'s Opp. Mem.") at 2, ECF No. 41). Since the parties did not negotiate or adopt any

successor agreement, PAA denies that it owes any amount to the Fund following the expiration of the original CBA.

The Fund interprets the Trust Agreement differently and argues that Section 9.04 contemplates contributions after the expiration of the CBA regardless of whether or not a new CBA was being negotiated. Because Section 6.08 of the Trust Agreement gives the Trustees the sole discretion to interpret the Agreement, the Fund contends that its interpretation is binding on PAA.

Where, as here, an ERISA plan gives the fund administrator discretionary authority to construe the terms of a benefits plan, the administrator's interpretation will be set aside "only if it is arbitrary and capricious." *Black v. Long Term Disability Ins.,* 582 F.3d 738, 744-45 (7th Cir. 2009). Under this standard of review, the administrator's plan interpretation is entitled to "the highest level of deference." *Exbom v. Central States, Se. & Sw. Areas Health & Welfare Fund,* 900 F.2d 1138, 1142 (7th Cir. 1990).

The dispute over PAA's obligations to the Fund appears to arise out of Section 9.04's somewhat misleading use of the conjunction "and," which could indicate that continued fund contributions were required only in the event that a new or renewal CBA was being negotiated. But the language of Section 9.04 is far from clear and the Fund's contention that contributions were to continue whether or not the parties were engaged in such negotiations is a reasonable enough reading of the Trust Agreement.

Indeed, there is some evidence that PAA itself agreed with that interpretation, since it continued to make payments to the Fund for nine months after the expiration of the CBA despite there having been no negotiations for any successor agreement during that time. In any event, even if the contrary position that PAA now adopts is correct, PAA agreed to be bound by the Trustees' interpretation of the Trust Agreement and there is no basis for rejecting the Fund's reading of Section 9.04 as being arbitrary and capricious. Accordingly, PAA's arguments regarding the limited scope of its obligations following the expiration of the CBA are unavailing.

### B. PAA's Evidentiary Objections

As proof of PAA's overdue fund obligations, the Fund relies in part upon the affidavits of Dean Dailey ("Dailey"), the Fund's Collections Manager, and Suzette Cordero ("Cordero"), the Fund's Audit Manager. PAA contends that these affidavits should not be considered because they lack proper foundational support.

Rule 56(c)(4) of the Federal Rules of Civil Procedure states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Federal Rule of Evidence 602 further provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.

Evidence to prove personal knowledge may consist of the witness's own testimony."

Both the Dailey and Cordero Affidavits plainly meet the foundational requirements under the Federal Rules. Dailey offers testimony concerning the amount of unpaid fund contributions owed by PAA and attests that, in his capacity as the Fund's Collections Manager, he reviews records of contributions received by the Fund, monitors records on each entity required to make contributions, reviews contribution reports, and manages "all books, records, documents and papers relating to such entities who are delinquent in their obligations to the Welfare Fund." (Aff. of Dean Dailey, sworn to on Mar. 1, 2013 ("Dailey Aff.") ¶ 2, ECF No. 29-1). Dailey's summary of PAA's past-due fund contributions therefore is a matter within his personal knowledge. Cordero's testimony as to the audit reports for the 2010 and 2012 Audits likewise is supported by her personal knowledge of the Fund's payroll audit procedures: she has served as the Fund's Audit Manager for more than ten years and, during that time, has overseen audits and supervised auditors throughout various regional offices. (Undated Aff. of Suzette Cordero ("Cordero Aff.") ¶ 2, ECF No. 29-1). PAA's foundational objections as to both affidavits therefore are without merit.

PAA also contends that the audit reports for the 2010 and 2012 Audits, which are attached to and described in Cordero's affidavit,

are inadmissible hearsay. Although PAA is correct that the reports are hearsay, they are admissible nonetheless as records of a regularly conducted business activity pursuant to Rule 803(6) of the Federal Rules of Evidence.

Business records are exempted from the hearsay rule because "businesses depend on them to conduct their own affairs, so there is little if any incentive to be deceitful, and because the regularity of creating such records leads to habits of accuracy." *Jordan v. Binns,* 712 F.3d 1123, 1135 (7th Cir. 2013). To qualify as a business record, "(1) the document must be prepared in the normal course of business; (2) it must be made at or near the time of the events it records; and (3) it must be based on the personal knowledge of the entrant or on the personal knowledge of an informant having a business duty to transmit the information to the entrant." *Bank of N.Y. Mellon v. Murillo,* No. 12-cv-6726, 2014 WL 773041, at *2 (N.D. Ill. Feb. 25, 2014) (quotation omitted). Although Cordero is not the custodian of the Fund's audit reports, she is competent to supply this foundational information because of her extensive knowledge of the Fund's audit procedures. *See, United States v. LeShore,* 543 F.3d 935, 941-42 (7th Cir. 2008) (business records foundation may be established by anyone with "knowledge of the procedure under which the records were created").

Cordero's affidavit makes clear that the audit reports for the 2010 and 2012 Audits were prepared in the regular course of the

Fund's business activities, that the audit reports were generated at or near the time the Audits were completed, and that the audit reports were compiled by the auditors who performed and thus had personal knowledge of the Audits. This is sufficient to qualify the reports as business records under Rule 803(6). Accordingly, the audit reports are admissible to prove amounts that are due and owing to the Fund. PAA's objection to the use of this evidence in connection with the present motion therefore is overruled.

## C. PAA's Failure to Show Disputed Issues of Material Fact

PAA's final argument is that summary judgment is improper because a genuine factual dispute exists as to the amounts PAA owes the Fund. In an effort to contradict the Fund's audit reports, PAA points to various internal payment records and an affidavit from its General Manager, Joseph Dengler ("Dengler"), which show that it made consistent monthly contribution payments from January 2007 through November 2011. The Fund does not dispute, however, that PAA paid contributions for the work it reported. Rather, it contends that, based upon its audit records, additional contributions are owed because PAA failed to report all time worked by its bargaining unit employees. Although PAA's payment records perhaps are probative of the fact that it made *some* contributions to the Fund, they do not contravene the Fund's audit findings or demonstrate that PAA did report all work that its employees performed. In addition, the Court notes that PAA concedes that it

paid the Fund nothing for work performed by its employees between December 2011 and February 2012, as it would have been required to do under the Fund's binding interpretation of the Trust Agreement.

In the absence of any company records that contradict the Fund's audit reports, the burden shifts to PAA to show that there are factual disputes sufficient to bar summary judgment. *Laborers' Pension Fund v. RES Envtl. Servs.,* 377 F.3d 735, 738-39 (7th Cir. 2004). Because PAA's evidence fails to create a genuine issue of material fact regarding the Fund's calculation of delinquent contributions, summary judgment must be granted in favor of the Fund.

## IV. CONCLUSION

For the reasons stated herein, the Fund's Motion for Summary Judgment [ECF No. 28] is granted. Judgment in the amount of $141,838.96, plus reasonable attorneys' fees, costs, and post-judgment interest is awarded to the Fund.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

Date: 3/25/2014